IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-3047-01-CR-S-ODS |
| ) | |
| JOSEPH PULLIAM, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION DENYING MOTION FOR NEW TRIAL

Pending is Defendant's Motion for New Trial (Doc. # 81) pursuant to Fed. R. Crim. P. 33(b)(1) and Brady v. Maryland, 373 U.S. 83 (1963). For the following reasons, Defendant's Motion is DENIED.

I. BACKGROUND

Defendant was indicted on May 16, 2007 for being a felon in possession of firearms and ammunition, possession of methamphetamine, and possession of marijuana. On July 27, 2007, Defendant filed a Motion to Suppress statements he made during a traffic stop conducted by Corporal Shannon Crouch of the Missouri State Highway Patrol on November 22, 2006. During the stop Defendant made incriminating statements to Corporal Crouch regarding his possession of firearms, ammunition, methamphetamine, and marijuana. Defendant's statements ultimately led to a search of his truck and residence where the contraband was recovered. On October 5, 2007, a hearing on Defendant's Motion to Suppress was held before Chief Magistrate Judge James England. At the suppression hearing, Corporal Crouch testified that the justification for stopping Defendant's truck was a missing front license plate. Judge England's Report and Recommendation that Defendant's Motion to Suppress be denied was adopted by the District Court on January 16, 2008.

On February 19, 2008, a jury found Defendant guilty on all three counts

contained in the indictment. At trial, Corporal Crouch again testified that the reason Defendant was stopped was that his truck was missing a license plate. Defendant was sentenced on June 19, 2008. At the sentencing hearing, the Assistant United States Attorney James Kelleher informed the Court that before the traffic stop leading to Defendant's arrest, Corporal Crouch had been contacted by Defendant's probation and parole officer, Charlotte Keeling, who informed Corporal Crouch that Defendant had just left her office after refusing to take a urine test for drugs.

On July 21, 2008, Defendant filed the instant Motion for New Trial, alleging that Corporal Crouch had provided false testimony at the suppression hearing and at trial. Defendant argues that the true basis for the traffic stop, which Defendant first learned at sentencing, and Corporal Crouch's false testimony, is newly discovered evidence under Fed. R. Crim. P. 33(b)(1). Defendant also argues that the Government's alleged withholding of this evidence was a due process violation under Brady v. Maryland, 373 U.S. 83 (1963).

## II. DISCUSSION

*A. Newly Discovered Evidence*

Defendant maintains that the information provided by Mr. Kelleher at Defendant's sentencing hearing suggests that Corporal Crouch provided false testimony at the suppression hearing and at trial. As an initial matter, the Court does not agree with Defendant's characterization of Corporal Crouch's testimony as "false." At the suppression hearing, Corporal Crouch testified that the justification for stopping Defendant's truck was a missing front license plate. The following exchanges occurred:

> **Assistant U.S. Attorney Kelleher**: Were you so employed on November 22nd of 2006?
> **Corporal Crouch**: Yes, sir.
>
> **Kelleher**: And do you recall what your duties were on that date?
> **Corporal Crouch**: On that date I was Assistant Zone Supervisor for Zone 3, Troop G, which incorporated Northern Howell and all of Shannon County.

2

> **Kelleher**: Specifically what did that duty entail?
> **Corporal Crouch**: Well, that duty entailed promoting safety upon the public highways and normal duties of law enforcement.
>
> **Kelleher**: On that date did you observe a Ford pickup truck on Highway 60 failing to display a front license plate?
> **Corporal Crouch**: Yes, I did.
>
> **Kelleher**: Do you know who the driver was?
> **Corporal Crouch**: Not prior to the stop, no.

Suppression Tr. at 2-3.

> **Defendant's Attorney, Marsha Jackson**: In your report you mentioned that you were aware of Mr. Pulliam's connection to a Cecil Williams that you knew to have been involved with drugs. At what point did you become aware of that connection?
> **Corporal Crouch**: At – the connection with Joe Pulliam and Cecil?
>
> **Jackson**: Yes.
> **Corporal Crouch**: That at the point that I was beginning to – or had information on Cecil Williams. I knew Joe by name, did not know him by face.
>
> **Jackson**: Did you run the license plate on his truck before you pulled him over?
> **Corporal Crouch**: No, I did not.
>
> **Jackson**: So, again back to my question. At what point did you become aware that Mr. Pulliam was the same Mr. Pulliam that you assumed to have a connection to Cecil Williams?
> **Corporal Crouch**: The area that I live in is pretty small, pretty concise. The group is very small.
>
> **Jackson**: Let me be more specific. At what point in the stop –
> **Corporal Crouch**: Oh.
>
> **Jackson**: of Mr. Pulliam?
> **Corporal Crouch**: Whenever Mr. Pulliam was sitting in my patrol car. He told me he was on probation for burglary and assault and that he had just tested positive – or he would have tested positive for marijuana and methamphetamine. That was the point that I started thinking there's probably going to be a good connection here.
>
> **Jackson**: You said you didn't know Mr. Pulliam by face. Did you know the vehicle that he drove?

3

**Corporal Crouch**: No, did not.

Suppression Tr. at 15-16.

The Court does not find Corporal Crouch's testimony to be inconsistent with the existence of the communication between Defendant's probation and parole officer and Corporal Crouch. Corporal Crouch's Affidavit, attached as Exhibit 1 to the Government's Suggestions in Opposition to Defendant's Motion for New Trial, better explains the sequence of events as they occurred on the day of the traffic stop. Corporal Crouch avers that late in the morning on November 22, 2006, he was contacted by Mr. Pulliam's parole officer, Charlotte Keeling, by cell phone. Ms. Keeling stated that Mr. Pulliam had just left her office after admitting to her that his urine would test positive for the presence of methamphetamine. She provided Corporal Crouch with a general description of the vehicle Mr. Pulliam was driving and his direction of travel.

Corporal Crouch states that at approximately 1:00 p.m. on November 22, 2006, he observed a blue Ford F-150 pickup truck traveling westbound that did not have a front license plate. He pulled the truck over and requested that the driver produce his driver's license. The driver indicated that he did not have a valid driver's license, explaining that it had expired. Corporal Crouch then asked the driver to accompany him to the patrol car. Once inside the patrol car, the driver identified himself as Joseph Pulliam. Corporal Crouch's Affidavit provides that he did not know positively who he had pulled over until Pulliam identified himself in the patrol car. Corporal Crouch states that while he was in the process of issuing Pulliam a summons for the violation, he asked him where he was coming from that afternoon. Pulliam then volunteered that he was returning from a visit from his parole officer and that he had refused to take a urine test because he would test positive for marijuana and methamphetamine.

Corporal Crouch's Affidavit explains and does not conflict with his testimony at the suppression hearing and at trial. He testified that he did not know he had pulled over Joseph Pulliam until Joseph Pulliam identified himself in the patrol car. Therefore, even if Corporal Crouch had received a phone call from Ms. Keeling earlier in the morning, his testimony that the reason for the stop was a missing front license plate was

4

not false.

Even if Corporal Crouch's failure to divulge his earlier communication with Ms. Keeling was fraudulent, and even if it was the real reason for the stop, Defendant's Motion for New Trial must still be denied. Federal Rule of Criminal Procedure 33(a) states that "[u]pon the defendant's motion the court may vacate any judgment and grant a new trial if the interest of justice so requires." A motion for new trial may only be granted based upon the discovery of new evidence if the defendant demonstrates that "(1) the evidence was unknown or unavailable at the time of trial, (2) the defendant did not lack diligence in attempting to uncover it, (3) the newly found evidence is material, and (4) the evidence is likely to produce an acquittal if a new trial is granted." United States v. Horn, 523 F.3d 882, 889 (8th Cir. 2008). The motion should be denied if the newly discovered evidence is "merely cumulative or impeaching." Id.

The Government maintains that it first learned about the existence of the phone call from Charlotte Keeling to Corporal Crouch on February 15, 2008. After learning of the communication, the Government filed a supplemental witness list including Ms. Keeling as a potential witness. The Government further states that it informed Defendant's attorney, Marsha Jackson, of the phone call shortly thereafter. Conversely, Ms. Jackson states that she did not learn of the phone call between Ms. Keeling and Corporal Crouch until Defendant's sentencing.

The Government argues that even if Ms. Jackson was not specifically informed of the phone call, Ms. Keeling was disclosed as a potential witness, and her contact information was provided to Ms. Jackson. Ms. Jackson did not attempt to contact Ms. Keeling; the Government argues, therefore, that Defendant did not exercise diligence in attempting to discover the evidence. The Court need not decide these disputed issues, however, because Defendant cannot establish that the "new" evidence is material or that it would likely produce an acquittal if a new trial is granted.

Even if Defendant's allegations that (1) Corporal Crouch provided false testimony and (2) that the true reason for stopping Defendant was not the missing front plate, are true, these pieces of new evidence are not material to his guilt or innocence, nor would they be likely to produce an acquittal. Corporal Crouch's failure to divulge during his

5

testimony that the communication had occurred, or that he actually stopped Defendant because he believed Defendant was the subject of that communication, does not in any way tend to establish that Defendant did not possess firearms, ammunition, or controlled substances–the conduct for which he was convicted.

Likewise, it would not have resulted in suppression of Defendant's statements. An otherwise valid stop "does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity." United States v. Cummins, 920 F.2d 498, 501 (8th Cir. 1991). Defendant's missing front license plate provided an objective basis for the stop, and the subjective intentions of Corporal Crouch play no role in "ordinary, probable cause Fourth Amendment analysis." Whren v. United States, 517 U.S. 806, 809-810 (1996).

Defendant also suggests that Corporal Crouch's "false" testimony could be used for impeachment purposes. However, new evidence that is merely impeaching does not provide a basis for a new trial. United States v. Papajohn, 212 F.3d 1112, 1118 (8th Cir. 2000). Therefore, Defendant is not entitled to a new trial under Fed. R. Crim. P. 33(b)(1).

### B. Brady Claim

In Brady v. Maryland, the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to either guilt or punishment." 373 U.S. 83, 87 (1963). To establish a violation under Brady, the defendant "must demonstrate that the government suppressed the evidence, that the evidence was exculpatory, and that the evidence was material to either guilt or punishment." United States v. Ryan, 153 F.3d 708, 711 (8th Cir. 1998). To establish materiality, the accused must show "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419, 433-34 (1995). A 'reasonable probability' is "any probability sufficient to undermine confidence in the outcome." Ryan, 153 F.3d at 712.

Assuming Defendant can establish the government suppressed evidence, Defendant cannot demonstrate the evidence was exculpatory or material. First, even if Corporal Crouch's subjective reason for stopping Defendant was the phone call from Charlotte Keeling stating that Defendant had refused to take a drug test, this is not evidence favorable to Defendant. Rather, it tends to incriminate him. In any event, the jury was aware that Defendant had just left his probation and parole officer after refusing to submit to a urine test because Defendant volunteered this information to Corporal Crouch. Furthermore, as discussed previously, the Defendant's motion to suppress would not have been granted even if this evidence had been available to Defendant.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for New Trial predicated on Fed. R. Crim. P. 33(b)(1) and Brady is denied.

IT IS SO ORDERED.

DATE: August 22, 2008

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT