IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JOSEPH PULLIAM, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 10-3449-CV-S-ODS |
| ) | Crim. No. 07-03047-01-CR-S-ODS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

ORDER AND OPINION (1) DENYING MOTION FOR POSTCONVICTION RELIEF AND
(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY

A jury convicted Movant of one count of being a felon in possession of a firearm, one count of possessing marijuana, and one count of possessing methamphetamine, and he was sentenced to a total of fifteen years of imprisonment. His convictions and sentence were affirmed on appeal. United States v. Pulliam, 566 F.3d 784 (8th Cir.), cert. denied, 130 S. Ct. 652 (2009). Movant then filed the instant proceeding, seeking postconviction relief pursuant to 28 U.S.C. § 2255. Movant detailed two grounds for relief: (1) ineffective assistance of counsel for failing to call Melissa Houck as a witness and (2) insufficiency of the evidence at trial. On February 23, 2011, the Court appointed counsel to represent Movant with respect to the first claim, and a hearing on that claim was held on December 13, 2011. Having considered the evidence introduced at the hearing and the parties' arguments, the Court now denies Movant's request for postconviction relief and declines to issue a Certificate of Appealability.

I. BACKGROUND

The only witness to testify at trial was Corporal Shannon Crouch of the Missouri Highway Patrol, and what follows is a brief summary of his testimony. He testified that he stopped Movant's vehicle for failure to display a front license plate, and he then discovered that Movant did not have a valid driver's license. Corporal Crouch

conversed with Movant while he ran a computer check, during which Movant told Corporal Crouch that he had just left his probation or parole officer, and the visit had not gone well. Movant explained he had declined to take a urine test because he knew it would test positive for methamphetamine and marijuana. Corporal Crouch then asked for permission to search Movant's car, and Movant consented. The search revealed, among other items, a bottle containing methamphetamine residue. Movant was arrested for possession of marijuana and driving without a valid license; he was read his <u>Miranda</u> rights and agreed to answer Corporal Crouch's questions. In those answers, Movant denied having weapons or drugs at his home; he explained he had a felony conviction and so he could not have firearms. Corporal Crouch recalled Movant's statements regarding killing deer so he could feed deer meet to his dogs and asked Movant how he killed the deer if he did not have firearms. Movant did not respond, so Corporal Crouch requested permission to search Movant's home. Movant initially refused to consent, but changed his mind as Corporal Crouch was contacting the Howell County Prosecuting Attorney's Office to seek a warrant and consented to a search of his home. He also provided more information about the guns in his home, including where and from whom he purchased them. Movant eventually executed a written consent to search, which permitted a search of a single-wide trailer, a "fifth-wheel" trailer, and a well house. Corporal Crouch testified the "primary residence" was the single-wide trailer, and that Movant told him Houck and her son lived in it but that he frequently stayed in the trailer as well. Firearms were found in the trailer, and controlled substances were also found at various locations on the property. When Corporal Crouch began asking Houck questions, Movant asked to speak to him and stated Houck had no knowledge of the drugs or guns in the trailer, the items belonged to him, and he kept the guns hidden from Houck. Movant also provided sufficient information about the guns and the drugs sufficient to confirm his knowledge about their existence and locations.

2

II.

A. Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

Movant argues his trial counsel (Marsha Jackson) was ineffective for failing to call Houck as a witness at trial, contending Houck would have testified that the single wide trailer was hers, that Movant did not stay in the trailer, that Movant did not have possession, ownership or control of the firearms, and that Movant did not know anything about the drugs found on the premises. In addition to his sworn statement that he asked trial counsel to call Houck as a witness, Movant submitted documents indicating

3

Houck held legal title to the single wide trailer while Movant held legal title to the fifth wheel.

Jackson was not called as a witness at the hearing. Before Jackson's involvement in the case, Movant was represented by the United States Public Defender's Office. Houck testified that she spoke to an investigator from the Public Defender's Office. She does not recall everything she told the investigator, but she does recall that she told him the guns did not belong to her. Jackson would have had access to the investigator's report. Houck planned to be at the courthouse during Movant's trial to provide moral support and, if necessary, testify, but Movant's sister (Valerie Sanders) conveyed a message from Jackson that Houck should not come to the courthouse. The Court concludes this directive would have been motivated by Jackson's belief that Houck's testimony would not have been helpful.

During the hearing, Houck established that she would not have provided testimony that would have been advantageous to Movant at his trial. She testified Movant purchased the single wide and titled it in her name. Her personal belongings were in the single wide. However, Movant and Houck had free access to and control of both trailers. Movant slept with her in the single wide, baths were taken in the fifth wheel (presumably because it was closer to the well house), and cooking utensils were kept in the fifth wheel. The property on which the trailers were located either belonged to or was being purchased by Movant. Houck testified she moved out of the single wide two to three weeks before Movant was arrested and took all of her belongings except for a couple of dogs; she had returned the day of Movant's arrest to retrieve her dogs, leave the keys, and leave the title. She had not taken the guns, strongly indicating they were not hers. She also denied they were hers, and further denied knowing they were in the trailer. While Houck would not state they belonged to Movant, when asked if she knew who the guns belonged to she responded she "[k]ind of figured if it's – it was just us and him living there . . . I mean it wasn't mine." Houck also testified Movant asked her to testify that they lived separately, which was not the truth. Finally, Houck would have testified about Movant's drug use and his access to and knowledge of the drugs on the premises.

4

The Court concludes Jackson was aware of Houck's liability as a potential witness, decided not to put her on the stand and endeavored to keep her away from the trial. This did not violate Strickland's performance prong: it is quite clear Jackson made a strategic decision after concluding Houck's testimony would be more harmful than helpful. After hearing Houck's testimony the Court reaches the same conclusion, resulting in the conclusion that Strickland's prejudice prong was not violated. Houck would not have provided any exonerating testimony. To the contrary, she establishes Movant had dominion and control over the single wide trailer and its contents and that the guns did not belong to her. The facts that she did not know about them, did not take them when she moved out, and had no plans to take them further suggest they did not belong to her or her son. Finally, in light of Movant's statements to Corporal Crouch, the Court concludes Houck's testimony would not have had any possibility of altering the jury's decision.

Movant suggests Houck did not provide exonerating testimony because she was intimidated. The Court will not discuss the details of this claim. It is enough to say that there is no indication that Houck *ever* said anything that would have exonerated Movant. Moreover, Houck's failure to testify had nothing to do with intimidation: she did not testify because Jackson did not call her as a witness and because Jackson did not want Houck at the courthouse. Finally, the incident that allegedly intimidated Houck had nothing to do with Movant, and Movant's argument is not supported by Houck's testimony.

Finally, evidence was presented by Movant's sister, Valerie Sanders. Movant did not assert his attorney was ineffective for failing to call Sanders to testify, so there is no need to consider the effect her testimony might have had at trial.[1] Nonetheless, the Court notes Sanders did not live at the property. While she believed the guns belonged to Houck's son and a neighbor there is no basis her knowledge. Similarly, while she testified that Movant lived in the fifth wheel, Sanders based this conclusion on the fact that Movant's clothes were in the fifth wheel. Sanders' testimony does not establish

---

[1] Jackson also told Sanders not to come to the courthouse.

5

Movant lacked dominion and control over the trailer and its contents, so her testimony would not have had a possibility of affecting the jury's verdict.

## B. Sufficiency of the Evidence

Movant's second argument is, essentially, that Corporal Crouch's testimony about his understanding and recollection of Movant's statements is insufficient evidence to support a conviction. Sufficiency of the evidence must be challenged on direct appeal and cannot be challenged in a postconviction proceeding. E.g., United States v. Norton, 539 F.2d 1194, 1195 (8th Cir. 1976); Houser v. United States, 508 F.2d 509, 515-16 (8th Cir. 1974); see also Auman v. United States, 67 F.3d 157, 161 (8th Cir. 1995) (postconviction proceeding is not a substitute for direct appeal). In any event, Movant is incorrect as a matter of law.

## C. Certificate of Appealability

In order to appeal, Movant must first obtain a Certificate of Appealability. The Court customarily issues an Order addressing the Certificate of Appealability contemporaneously with the order on the Motion because the issues are fresh in the Court's mind and efficiency is promoted. See Rule 11(b), Rules Governing Section 2255 Proceedings.

28 U.S.C. § 2253(c)(2) provides that a Certificate of Appealability should be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." This requires Movant to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)

6

Case 6:07-cr-03047-ODS   Document 98   Filed 12/16/11   Page 6 of 7

(quotation omitted). The Court concludes neither of Movant's claims justify further proceedings.[2]

### III. CONCLUSION

For these reasons, the request for postconviction relief is denied, and the Court declines to issue a Certificate of Appealability.

IT IS SO ORDERED.

                                                  /s/ Ortrie D. Smith
                                                 ORTRIE D. SMITH, SENIOR JUDGE
DATE: December 16, 2011                 UNITED STATES DISTRICT COURT

---

[2] The requirement of specifying reasons for denying a Certificate of Appealability, previously imposed by Fed. R. App. P. 22(b), appears to no longer exist. See Rule 11, Rules Governing Section 2255 Proceedings.